No. 71–600.   State Board of Election Commissioners et al. *v.* Evers et al.   Appeal from D. C. S. D. Miss. dismissed for failure to docket case within time prescribed by Rule 13 (1).

Mr. Justice Blackmun, with whom Mr. Justice Rehnquist joins, concurring.

I join the Court's dismissal of this appeal for failure to docket within the prescribed time.   I do so despite the fact that the Court apparently has not consistently enforced the provisions of its Rule 13 (1) and, on occasion, has permitted appeals despite untimely docketing.   See, for example, another Mississippi voting rights case, *Whitley* v. *Williams,* one of the cases decided with *Allen* v. *State Board of Elections,* 393 U. S. 544 (1969). Compare *Johnson* v. *Florida,* 391 U. S. 596, 598n (1968), and *United Public Workers* v. *Mitchell,* 330 U. S. 75, 84–86 (1947), with *Pittsburgh Towing Co.* v. *Mississippi Valley Barge Line Co.,* 385 U. S. 32 (1966); *Landry* v. *Boyle,* 393 U. S. 220 (1968); *Shapiro* v. *Doe,* 396 U. S. 488 (1970); *Stein* v. *Luken,* 396 U. S. 555 (1970); and *United States* v. *Cotton,* 397 U. S. 45 (1970).

Because I do not wish this disposition of the case to provide a basis for any inference that I, as one member of this Court, am in agreement with the reasoning set forth in the *per curiam* opinion of the three-judge District Court, 327 F. Supp. 640 (SD Miss. 1971), I append this comment.

Section 5 of the Voting Rights Act of 1965, 79 Stat. 439, as amended, 84 Stat. 315, 42 U. S. C. § 1973c, first provides that a State, upon proposing an alteration of voting qualifications and procedures of the kind specified, may institute an action for an approving declaratory

judgment in the United States District Court for the District of Columbia. It then goes on as follows:

> "*Provided,* That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, except that neither the Attorney General's failure to object nor a declaratory judgment entered under this section shall bar a subsesequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure. . . ."

In the present case, the changes in Mississippi's election laws effected by the legislature in 1970 were submitted to the Attorney General of the United States on July 23, 1970. In September the Mississippi Attorney General received a letter from the Assistant Attorney General of the Civil Rights Division of the Department of Justice reading in part as follows:

> "The problem posed by these enactments is extremely complex. . . .
>
> ". . . [W]e have been unable to reach the conclusion that the projected effect would be to deprive Negro voters of rights under the Voting Rights Act.
>
>       .       .       .       .       .
>
> "Under these circumstances, the Attorney General is not prepared at this time—60 days after receipt of these statutes—to make any determination of the validity or invalidity of Acts 362 and 363 under the Voting Rights Act. . . . Should our subsequent investigation persuade us that the acts in fact vio-

late the 15th Amendment, the Voting Rights Act or other applicable federal legislation, we will take appropriate legal steps to raise the issues in court, or, if litigation is initiated by others to participate therein in an appropriate manner.

"I want to make clear that no inference of approval or disapproval is to be drawn from the failure of the Attorney General to object within the statutory period. The fact is that we have been unable to reach a decision within the alloted time on the basis of available evidence. . . ."

The three-judge District Court granted its injunctive relief on the ground that the pre-clearance requirements of § 5 had not been satisfied. It did not reach the substantive allegations of racial discrimination set forth in the appellees' complaint. Specifically, the District Court said, "Since Mississippi's new laws have not been subjected to the required federal scrutiny, they are still in a state of suspended animation." The court held that until the statutorily suggested favorable declaratory judgment was obtained in the District of Columbia, or the Mississippi laws were *resubmitted* to the Attorney General and he had specifically approved, "the acts involved in this case may not be given any effect." 327 F. Supp., at 644.

I am unable so to read § 5 of the Voting Rights Act of 1965, and I cannot subscribe to the District Court's reasoning. Section 5, it seems to me, plainly and clearly provides that if the proposal has been properly submitted to the Attorney General, as it was, "and the Attorney General has not interposed an objection within sixty days after such submission," as he did not, the proposed statutory changes "may be enforced" without the court's proceeding in the District of Columbia and without resubmission to the Attorney General. Here the proposal was properly submitted to the Attorney

General and he took no action by way of interposing an objection within the allowed 60 days. I do not see how the statute can be read or construed in any way other than to the effect that the conditions of its proviso were fulfilled and that the proposed new legislation was therefore enforceable, subject, of course, to the statute's recognized exception as to any contest on the merits. I see nothing in *Perkins* v. *Matthews*, 400 U. S. 379, 385 (1971), that supports a contrary conclusion. In my view the District Court's holding, when it equated nonaction by the Attorney General with the interposition by him of an objection, is without foundation in the statute.

With the promulgation on September 10, 1971, of "Procedures for the Administration of Section 5 of the Voting Rights Act of 1965," 36 Fed. Reg. 18186–18190, 28 CFR §§ 51.1–51.29, and the specific procedure authorized for the Attorney General by § 51.19, the problem should not arise in the future.

MR. JUSTICE DOUGLAS, dissenting.

I would not dismiss this appeal for nonjurisdictional tardiness in docketing. There is no doubt that we have statutory jurisdiction to hear this case under 42 U. S. C. § 1973c. And, no doubt we may waive our self-imposed Rule 13 (1) inasmuch as "the requirement of docketing within sixty days [is not a] limitation on our power to hear [an] appeal." *United Public Workers* v. *Mitchell*, 330 U. S. 75, 86. But, as MR. JUSTICE BLACKMUN observes, *ante*, at 1001, this Court has failed to develop even the shadow of a consistent practice concerning the effect to be given an appellant's failure to docket within the prescribed time. In some cases the defect has been fatal [1]

---

[1] *Pittsburgh Towing Co.* v. *Mississippi Valley Barge Line Co.*, 385 U. S. 32; *Landry* v. *Boyle*, 393 U. S. 220; *Shapiro* v. *Doe*, 396 U. S. 488; *Stein* v. *Luken*, 396 U. S. 555; *United States* v. *Cotton*, 397 U. S. 45; *Cheley* v. *Parham*, 404 U. S. 878.

while in others it has been forgiven.[2]   This appeal was
docketed 66 days late.   Yet in *Johnson* v. *Florida,* 391
U. S. 596, 598, we entertained without explanation an
appeal which was 56 days tardy.   And, Mississippi's own
experience with the vagaries of our dispensation of waivers
has not been an illuminating one.   In *Whitley* v. *Williams,*
decided with *Allen* v. *State Board of Elections,* 393 U. S.
544, another challenge to that State's voting laws, the
State was the appellee and the challenger's appeal was
docketed 60 days out of time.   Nonetheless, the infraction
was passed over, the case was heard, and the District
Court was reversed.

I cannot acquiesce in an arbitrary practice which per-
mits the Court to sweep unpleasant cases under the rug.[3]
Unless we are willing to prescribe criteria for guiding our
granting of waivers of the docketing requirement, such
as we have done in Rule 19 for exercising our certiorari
discretion, then we should either enforce Rule 13 (1) for
all or for none.

---

[2] *United Public Workers* v. *Mitchell,* 330 U. S. 75, 86; *Johnson* v.
*Florida,* 391 U. S. 596, 598; *Whitley* v. *Williams,* decided with
*Allen* v. *State Board of Elections,* 393 U. S. 544; see also *Durham*
v. *United States,* 401 U. S. 481 (Rule 22 (2) waiver).

[3] This is not a frivolous appeal.   Whatever the infirmities of the
Mississippi voting statute, there is a strong argument, as MR. JUSTICE
BLACKMUN indicates, that the District Court may have erred in
using § 5 of the Voting Rights Act of 1965, 79 Stat. 439, 42 U. S. C.
§ 1973c, to enjoin its effectiveness.