**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**Glenn Martin HELLER, d/b/a Beacon
Hill Gulf, Defendant, Appellant.**

No. 91–1811.

United States Court of Appeals,
First Circuit.

Submitted Jan. 21, 1992.

Decided Feb. 19, 1992.

Glenn Martin Heller on Motion to Transfer Appeal to the Temporary Emergency Court of Appeal and on Opposition to Appellee's Motion for Summary Dismissal, for defendant, appellant.

Wayne A. Budd, U.S. Atty., and Countess C. Williams, Asst. U.S. Atty., Boston, Mass., on Motion for Summary Dismissal, for plaintiff, appellee.

Before TORRUELLA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and SELYA, Circuit Judge.

PER CURIAM.

Plaintiff-appellee the United States has moved for summary dismissal of this appeal on the ground that this court lacks appellate jurisdiction. Defendant-appellant Glenn Heller, proceeding pro se, has moved to transfer the appeal to the Temporary Emergency Court of Appeals ("TECA").

■ This appeal is from a district court judgment enforcing a remedial order issued by the Department of Energy and ordering Heller, a gasoline retailer, to pay $159,-689.95 in civil penalties and in restitution for customer overcharges. Heller does not dispute the government's assertion that this case arises under the Economic Stabilization Act, 12 U.S.C. § 1904 note, and the Emergency Petroleum Allocation Act, 15 U.S.C. § 751 et seq. Accordingly, TECA has exclusive jurisdiction over this appeal. 12 U.S.C. § 1904 note, § 211(b)(2); 15 U.S.C. § 754(a)(1). This court has no jurisdiction.

■ Under 28 U.S.C. § 1631, "[w]henever ... an appeal ... is ... filed with ... a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such ... appeal to any other such court in which the

... appeal *could have been brought at the time it was filed....*" (Emphasis added).

This statutory language makes it clear that in order for the transferor court to decide whether the statutory requirements for transfer are met, the transferor court must first decide whether the appeal could have been brought in the transferee court at the time it was filed. Thus, for the purpose of deciding whether we should transfer the case, we must inquire whether TECA would have jurisdiction. *See, e.g., Keller v. Petsock,* 849 F.2d 839, 843 (3d Cir.1988); *Commonwealth of Massachusetts v. Departmental Grant Appeals Board,* 815 F.2d 778, 784 (1st Cir.1987); *Billops v. Dep't of the Air Force,* 725 F.2d 1160, 1163 (8th Cir.1984). In doing so, of course, we must apply TECA's rules and precedents as we believe TECA would apply them.

Absent some extension of the time for appeal, this appeal could not have been brought in TECA at the time it was filed. Heller filed the notice of appeal on July 22, 1991, over thirty days after the district court's judgment entered on May 30, 1991. Rule 15(a) of TECA's General Rules requires that "[a] notice of appeal ... shall be filed with the clerk of this court within 30 days of the entry of judgment by the district court." Heller's notice of appeal was late. Accordingly, unless the time for appeal were somehow extended, we would not have any statutory basis under 28 U.S.C. § 1631 for transferring the appeal to TECA.

■ TECA has made it clear that "[t]he only ground for extending the prescribed time for filing a notice of appeal which this court will consider is 'a showing of unique circumstances.' *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., supra,* 371 U.S. [215] at 217 [83 S.Ct. 283, 285, 9 L.Ed.2d 261 (1962)]...." *Reed v. Kroger Co.,* 478 F.2d 1268, 1271 (Temp. Emer.Ct.App.1973). Thus, Heller's only hope to avoid dismissal of his appeal for lack of jurisdiction is to make a showing of "unique circumstances."

This court on November 8, 1991 issued an order in which, in recognition of Heller's

pro se status, this court deferred ruling on the pending motions in order to give Heller an opportunity to raise any claim of unique circumstances he might have. Our order directed Heller to show cause why, on account of unique circumstances, this appeal should not be dismissed on grounds of untimeliness.

Heller responded to the show cause order by asserting that he had relied upon the incorrect assurances of employees in the district court clerk's office that he had sixty days in which to appeal. Heller stated as follows:

Appellant relied upon the assurances of District Court personnel and upon the accuracy of specific information provided by those same personnel in determining the amount of time available in which Appellant might properly file his timely appeal. Unfortunately, the District Court personnel proved to be mistaken in the information and assurances which they provided to the Appellant.

Upon Appellant's receipt in June of the District Court's Judgment dated May 29th, 1991, Appellant telephoned the Clerk's Office at the District Court to inquire about filing an appeal. Appellant plainly stated that he was proceeding *pro se* and that he wished to file an appeal. Appellant then inquired as to the specific rules governing time limitations for filing his appeal. He was told at that time by Court personnel in authority that since the United States Government is a party to the case, Appellant had sixty (60) days from the date of the District Court's Judgment in which to file his appeal. Appellant contacted the Clerk's Office on at least one subsequent occasion and was again reassured as to this filing deadline by other knowledgeable personnel within the Office.

As a direct result of these specific telephone conversations, Appellant felt certain that the information he was given was complete and accurate, and that the assurances by these knowledgeable personnel within the Clerk's Office could, in good faith, be safely and wholly relied upon by Appellant in calculating the maximum time available to properly file

his appeal. Appellant never made (and had no reason to make) any prior assumptions concerning such filing time limitations since he is not an attorney.

According to Heller's response, the assurances by the clerk's office were given him within the 30–day period, so had he instead been given correct advice, he would have had plenty of time to file a timely appeal.

We now entertain Heller's allegations because an appellate court is the proper forum to determine whether the doctrine of unique circumstances should apply in a given case (although the appellate court may choose to remand the matter to the trial court for factual determinations, if necessary). *Kraus v. Consolidated Rail Corp.*, 899 F.2d 1360, 1365 (3d Cir.1990); *In re Provan*, 74 B.R. 717, 720 (9th Cir.B.A.P.1987), *aff'd*, 862 F.2d 318 (9th Cir.1988). We see no need for a remand here because we conclude that even if Heller could demonstrate all of the factual assertions contained in his response to our show cause order, the unique circumstances doctrine would not apply.

The doctrine permitting a late appeal in cases of "unique circumstances" is a judge-made doctrine created by the Supreme Court. *See Wolfsohn v. Hankin*, 376 U.S. 203, 84 S.Ct. 699, 11 L.Ed.2d 636 (1964) (per curiam); *Thompson v. INS*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (per curiam); *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962) (per curiam). The doctrine may be on shaky ground. Four Justices have rejected the doctrine in a dissent. *Houston v. Lack*, 487 U.S. 266, 282, 108 S.Ct. 2379, 2388, 101 L.Ed.2d 245 (1988) (Scalia, J., dissenting). Many courts have questioned its continuing vitality. *See, e.g., Pinion v. Dow Chemical*, 928 F.2d 1522, 1529 (11th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 438, 116 L.Ed.2d 457 (1991), and cases cited therein; *Varhol v. National R.R. Passenger Corp.*, 909 F.2d 1557, 1562 (7th Cir.1990). The Supreme Court, however, passed up an opportunity to repudiate it in *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 179, 109

S.Ct. 987, 993, 103 L.Ed.2d 146 (1989). In the absence of express overruling by the Supreme Court, courts of appeals generally have continued to assume that the doctrine remains viable. *See, e.g., Feinstein v. Moses,* 951 F.2d 16 (1st Cir.1991); *Pinion, supra,* 928 F.2d at 1530; *Varhol, supra,* 909 F.2d at 1562. TECA has not to date expressed any doubt on that point.

The Supreme Court in *Osterneck* stated that the unique circumstances exception, as articulated in *Thompson, supra,* 375 U.S. 384, 84 S.Ct. 397, "applies only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done." *Osterneck, supra,* 489 U.S. at 179, 109 S.Ct. at 993. TECA has indicated that it views the exception to be a "limited concept" with "narrow confines." *United States v. Beacon Bay Enterprises, Inc.,* 840 F.2d 921, 923 (Temp.Emer.Ct.App.1988). The court has restated the doctrine as follows:

> "[I]f at a time when a party might take a timely appeal, he receives assurances from the district court that he need not appeal ..., or that time for appeal is extended ..., then he should not lose his right to appeal where the district court was in fact mistaken."

*United States v. Wickland,* 619 F.2d 75, 79–80 (Temp.Emer.Ct.App.1980) (quoting *United States v. Cooper,* 482 F.2d 1393, 1399 (Temp.Emer.Ct.App.1973)). TECA also has stated that an attorney's ignorance of TECA's 30–day limit, assuming in error that the 60–day limit of Fed.R.App.P. 4(a)(1) would apply, did not constitute "unique circumstances" that would permit the granting of a motion for extension of time to file a notice of appeal. *Beacon Bay Enterprises, Inc., supra,* 840 F.2d at 924.

There has been some disagreement among the circuits about the scope of the doctrine, specifically about the extent to which misleading actions or statements by a judicial officer that fall short of an affirmative assurance may satisfy the doctrine. *See Pinion, supra,* 928 F.2d at

1530–31. In the wake of *Osterneck,* courts generally have insisted on the requirement "that the doctrine applies only where a court has affirmatively assured a party that its appeal will be timely." *In re Slimick,* 928 F.2d 304, 310 (9th Cir.1990); *Green v. Bisby,* 869 F.2d 1070, 1072 (7th Cir.1989). We need not concern ourselves with that issue here, however, because Heller has alleged that he received specific, affirmative assurances that his appeal would be timely if filed within 60 days.

The issue here, instead, is that Heller alleges affirmative assurances only by clerk's office personnel, *not* by a judge. The Supreme Court authorities which established the unique circumstances doctrine (*Harris, Thompson,* and *Wolfsohn* ) all involved misleading statements or actions by a district judge. In *Osterneck,* the petitioners claimed that the doctrine should apply "because certain statements made by the District Court, as well as certain actions taken by the District Court, *the District Court Clerk,* and the Court of Appeals, led them to believe that their notice of appeal was timely." *Osterneck, supra,* 489 U.S. at 178, 109 S.Ct. at 993 (emphasis added). The Supreme Court, ruling that the requirement of a "specific assurance" was not met, did not expressly address the question whether a specific assurance from the district court clerk could have been sufficient. The Court did say, however, that "specific assurance by a judicial officer" was necessary. We understand the term "judicial officer" in this context to mean a judge, not an employee in the office of the clerk. *See United States v. Carrasquillo,* 667 F.2d 382, 385–86 (3d Cir.1981) (the Speedy Trial Act, 18 U.S.C. § 3172(1), defines "judicial officer" to mean any federal district judge or magistrate judge, and was meant to exclude district court clerks and any persons acting on behalf of the court); *United States v. Harris,* 544 F.2d 947, 949 (8th Cir.1976) (the Bail Reform Act's definition of "judicial officer" "means any federal judge or magistrate").

The Eleventh Circuit, it is true, has extended the doctrine to include misleading statements or actions by the district court clerk's office. In *Willis v. Newsome,* 747

F.2d 605 (11th Cir.1984), appellant's counsel alleged that the district court clerk told him, on the last day of the 30-day appeal period, that a notice of appeal mailed on that day would be stamped with that day's date according to local custom. In reliance on this advice, appellant's counsel passed up the chance to effect timely filing by hand delivery and instead mailed the notice of appeal, which was received, filed, and stamped late. In addition, because no one in the clerk's office told counsel that the appeal had been stamped late, counsel failed to timely file a Fed.R.App.P. 4(a)(5) motion to extend the time for appeal. The Eleventh Circuit remanded to the district court for factual findings as to whether counsel had reasonably and in good faith relied upon the clerk's misrepresentation, but ruled that if counsel had, then the unique circumstances doctrine would apply. The court stated:

> Courts will permit an appellant to maintain an otherwise untimely appeal in unique circumstances in which the appellant reasonably and in good faith relied upon judicial action that indicated to the appellant that his assertion of his right to appeal would be timely, so long as the judicial action occurred prior to the expiration of the official time period such that the appellant could have given timely notice had he not been lulled into inactivity.

*Id.* at 606. The court thus assumed that action by the clerk constituted "judicial action."

The Seventh Circuit has disagreed. In *Sonicraft, Inc. v. NLRB,* 814 F.2d 385 (7th Cir.1987), appellant faced a deadline of thirty days to appeal to the Seventh Circuit from the NLRB's denial of a request for attorneys' fees. Appellant's counsel mailed the petition for review within the 30-day period, but it was received—and hence "filed"—late. Counsel claimed that he had relied on advice from a staff attorney employed by the Seventh Circuit, who told counsel that a petition mailed within thirty days would be timely. The court noted that, in fact, counsel had apparently spoken to a clerk's office employee who was not an attorney, not to a staff attor-

ney, but ruled that "[w]hether or not there was misleading advice and whether or not it came from a staff attorney, it cannot extend the deadline for filing the petition for review. The deadline ... is jurisdictional, meaning we can't waive it; if we can't, neither can the court's nonjudicial personnel." *Id.* at 387. The court went on to point out that the unique circumstances doctrine "is limited to the situation where the district court (or, we suppose, other tribunal) assures a party that he has time to appeal, and the party relies and foregoes filing a timely appeal." *Id.* The court opined that to apply the doctrine to clerk's office employees would require extending it, which the court had "no inclination" to do. After all, the court concluded: "Subordinate employees of the judiciary have no authority to waive congressional limitations on judicial power." *Id.*

Other courts, too, have declined to extend the doctrine to the clerk's office. *See Neeley v. Murchison,* 815 F.2d 345, 347 (5th Cir.1987) (counsel's reliance on incorrect oral assurances of clerk's office employees does not render timely counsel's late filing of dischargeability complaint); *In re Frontier Airlines, Inc.,* 108 B.R. 274, 276 (D.Colo.1989) (states that "[r]eliance on the statements, action, or inaction by the clerk of the court normally will not justify application of the doctrine of unique circumstances," but notes, citing *Willis, supra,* 747 F.2d 605, that the doctrine may apply where "the misleading action of the clerk has related to the time period for filing the notice of appeal, not its legal effect").

■ More important, TECA itself has emphatically refused to apply the unique circumstances doctrine in a case where appellant's counsel pleaded reliance on the oral advice of a district court clerk. In *Reed v. Kroger Co.,* 478 F.2d 1268 (Temp.Emer.Ct.App.1973), appellant's counsel filed a notice of appeal in person with the clerk of the district court within TECA's 30-day limit. Counsel alleged that on that occasion, he conversed with the clerk, made it clear to the clerk that the appeal was to TECA and not to the Seventh

Circuit, and asked whether he was following proper procedure under TECA rules. The clerk assured him that he was. In fact, however, he was not, because at that time TECA Rule 15(a) expressly stated that a notice of appeal "shall be filed with the clerk of this court [*i.e.*, TECA] within 30 days" of entry of judgment. By the time counsel's notice of appeal reached the clerk of TECA, the time for appeal had long since expired.[1] Counsel argued that the appeal should nevertheless be treated as timely under the unique circumstances doctrine.

TECA rejected this argument, characterizing counsel's reliance on the clerk's oral advice as "an effort to justify the complete absence of professional care." *Id.* at 1271. The court concluded:

> We strongly believe that professional standards require counsel to be familiar with, or to make at least a reasonable effort to learn, the rules of the courts in which they practice.... We are unable to conclude that counsel's failure to acquaint himself with the basic requirement for the filing of his client's notice of appeal can properly be described as constituting 'unique circumstances'....

*Id.* at 1271–72. *See also Spinetti v. Atlantic Richfield Co.*, 552 F.2d 927, 930 (Temp.Emer.Ct.App.1976) ("attorneys may not escape from their procedural errors by claiming reliance on a district court clerk's advice").

■ Although *Reed* makes it clear that TECA would not invoke the unique circumstances doctrine to rescue counsel who filed a late notice of appeal in reliance on clerk's office advice, the appellant in the instant case, Heller, was and is proceeding pro se. We are aware that, as the Eleventh Circuit has noted, when "dealing with the mistakes of a pro se litigant, ... the justification for applying the 'unique circumstances' exception would become at least more compelling because pro se litigants are arguably not charged with as

much responsibility in following the filing rules." *Pinion, supra*, 928 F.2d at 1533 n. 11. We acknowledge, too, that much of the reasoning in *Reed* is inapplicable to a pro se. On the other hand, our recent admonition that an appellant's "pro se status [does not] absolve him from compliance with the Federal Rules of Civil Procedure" applies with equal force to the TECA rules. *Feinstein, supra*, 951 F.2d at 21.

■ The deadline for filing a notice of appeal is jurisdictional and therefore not waivable by TECA. The unique circumstances doctrine, if it retains any vitality, "jostles uneasily" with this principle, *Sonicraft, supra*, 814 F.2d at 387, and must therefore be narrowly construed. *See Smith v. Evans*, 853 F.2d 155, 159 (3d Cir.1988). We conclude (and we believe that TECA would conclude) that narrow construction requires that clerk's office personnel not be, in effect, empowered to bring about the waiver of fundamental jurisdictional requirements for pro se litigants merely by giving out incorrect or misleading advice. We agree with the reasoning of the Seventh Circuit in *Sonicraft, supra*, 814 F.2d at 387, that the unique circumstances doctrine "is limited to the situation where *the district court (or, we suppose, other tribunal)* assures a party that he has time to appeal." (Emphasis added). After all, the Supreme Court in *Osterneck, supra*, 489 U.S. at 179, 109 S.Ct. at 993, has required "specific assurance by a judicial officer."

We hold, therefore, that reliance on the advice, statements, or actions of court employees cannot trigger the doctrine, whether appellant is or is not pro se. We caution, however, that our holding should not be read to suggest that pro se status can have no relevance to application of the doctrine. "Unique circumstances" is an equitable doctrine that, within the sphere of its potential application, enables the court to inquire into "the reasonableness of the

---

1. In the instant case, too, of course, Heller filed his notice of appeal with the clerk of the district court, not with the clerk of TECA as is required by current TECA Rule 15(a). This defect is no obstacle to transfer to TECA and to TECA's

jurisdiction. The entire purpose of 28 U.S.C. § 1631, after all, is to permit transfer to the proper court of a timely appeal filed in the wrong court. The issue of transfer was neither raised nor considered in *Reed*.

**32**

party's conduct in its totality," *Kraus, supra*, 899 F.2d at 1365, and to ask "whether the appellant's professed reliance on the actions of the district court was objectively reasonable." *Feinstein, supra*, 951 F.2d at 20. A party's pro se status certainly may influence the determination whether that party has reasonably relied on an affirmative assurance by a judge. Reliance by a pro se may be reasonable in situations where similar reliance by counsel would be unreasonable. Pro se status, however, cannot bring within the confines of the doctrine a fact situation—like this one—that simply does not fit within those parameters.

We acknowledge that our ruling could cause hardship to pro se litigants who, lacking procedural expertise, understandably look to clerk's office personnel for procedural guidance. Self-represented parties must be aware from the outset that advice from that quarter is merely advice and cannot excuse a failure to meet fundamental jurisdictional requirements. They must be aware, too, that this is a risk they assume when they opt to proceed pro se.

Any such hardship perhaps is mitigated in the case of Heller, who has had at least three counselled appeals decided by TECA. *See United States v. Heller*, 726 F.2d 756 (Temp.Emer.Ct.App.1983); *United States v. Heller*, slip op., no. 1–12 (Temp.Emer.Ct.App. 6/9/82); *United States v. Heller*, 635 F.2d 848 (Temp.Emer.Ct.App.1980). Presumably, therefore, Heller could have afforded counsel in this appeal as well, or if he could not, he at least had some reason to understand or suspect that his appeal was to TECA, not to this court, and would be governed by TECA rules.

Heller's motion to transfer his appeal is *denied.* The United States' motion for summary dismissal is *granted.*